JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Paul W. Kaufman, AUSA
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106 - 215-861-8579

## DEFENDANTS

Unicare Ambulance LLC, PA Paramedics LLC, Damon Wade and Amy Wade

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                       *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. Sections 3729-3733
Brief description of cause:
Recover treble damages, breach of contract and common law theories of fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
2,596.15

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   7/8/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____615 Chestnut Street, Suite 1250, Philadelphia, PA 19106_____

Address of Defendant: *See attached*_____

Place of Accident, Incident or Transaction: _____Philadelphia, PA_____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _7/8/2019_   _____[signature]_____   _92805_
　　　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　*Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.     Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
　　　*(Please specify):* _____

**B.     Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
　　　*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
　　　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5 2018)*

**Defendant's Addresses:**

**Unicare Ambulance LLC, PA Paramedics, LLC**
727 Wicker Avenue
Bensalem, PA 19020

**Damon Wade, Amy Wade**
1532 Society Hill Drive
Bensalem, PA 19020

8402 Rising Star Court
Kissimmee, FL 34747-1112

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| United States of America | : | CIVIL ACTION |
| v. | : | |
| Unicare Ambulance LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( x )

| | | |
|---|---|---|
| 7/8/2019 | Paul W. Kaufman | United States of America |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-861-8579 | 215-861-8579 | paul.kaufman2@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| UNICARE AMBULANCE LLC, | : | |
| PA PARAMEDICS LLC, | : | |
| DAMON WADE, and | : | |
| AMY WADE, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, United States of America, on behalf of its agency the Department of Health and Human Services ("HHS"), avers:

1.      Plaintiff, United States of America, brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C §§ 3729-3733, as amended, and to recover damages under breach of contract and common law theories of fraud, payment by mistake, unjust enrichment, negligent and fraudulent misrepresentation, and piercing the corporate veil.

2.      The United States seeks to recover hundreds of thousands of dollars in ambulance services billed by defendant Unicare Ambulance LLC ("Unicare") to federal payers during times that Unicare was not a licensed ambulance service provider.

3.      The United States also seeks to recover moneys paid to Unicare for periods that Unicare was accepted as a Medicare provider based on the false and misleading statements to HHS regarding its ownership and management in order to conceal that its actual principal had

1

been found to have forged company records submitted to state authorities.

4.     The United States also seeks to recover approximately $2,596,165 in Medicare overpayments to defendant PA Paramedics LLC ("PA Paramedics") from defendants PA Paramedics, Unicare, and Damon Wade.   Pursuant to its supplier agreement and extended repayment agreements with HHS, PA Paramedics was obligated to pay back those overpayments, but did not.   After defaulting on its repayment obligations, PA Paramedics, at the direction of Damon Wade, attempted to evade that obligation by using Unicare to bill Medicare for further services.   The overpayments are recoverable from all of these defendants because Unicare is the mere *alter ego* of PA Paramedics and Damon Wade dominated the affairs and assets of the both companies such that they are indistinguishable from him.

## THE PARTIES

5.     The United States is the federal sovereign.   Its agency the Department of Health and Human Services through the Centers for Medicare & Medicaid Services ("CMS") funds medical care for certain United States residents and persons through Medicare.

6.     Defendant Unicare is a Limited Liability Corporation ("LLC") organized under the laws of the Commonwealth of Pennsylvania.   At all times material to this complaint, defendant Unicare operated as an ambulance service provider in the Commonwealth of Pennsylvania. Beginning in September 2015, its principal place of business was 727 Wicker Ave., Bensalem, Bucks County, Pennsylvania.   Unicare provided services to Medicare beneficiaries.

7.     Defendant PA Paramedics is an LLC organized under the laws of the Commonwealth of Pennsylvania.   At all times material to this complaint, defendant PA

2

Paramedics operated as an ambulance service provider in the Commonwealth of Pennsylvania. At all times relevant to this Complaint, its principal place of business was 727 Wicker Ave., Bensalem, Bucks County, Pennsylvania.    PA Paramedics provided services to beneficiaries of Medicare.

8.    At all times relevant to this complaint, Damon Wade was the owner and principal executive of PA Paramedics.    At all times relevant to this Complaint, Damon Wade resided and worked in the Eastern District of Pennsylvania.    Except as described below, at all times relevant to this complaint, Damon Wade was a paramedic licensed by the Commonwealth of Pennsylvania.

9.    Amy Wade is the ex-wife of Damon Wade; although, despite their divorce, the Wades have at various points lived together in the same residence with their children.    As described in greater detail below, for a period starting in September 2015, Amy Wade was represented to state and federal authorities to be an executive officer and part owner of Unicare. At all times relevant to this Complaint, Amy Wade resided and worked in the Eastern District of Pennsylvania.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action under 31 U.S.C. §§ 3730, 3732 and 28 U.S.C. § 1345.

11.    This Court has personal jurisdiction over the defendants because each corporate defendant is organized under the laws of Pennsylvania and has its principal place of business in this district and each of the individual defendants resides in this district or resided in this district during the time period relevant to this complaint.

3

12.     Venue lies in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## MEDICARE PROGRAM BACKGROUND

13.     In order to receive payment for services rendered to Medicare beneficiaries, an ambulance company must enroll as a supplier to Medicare, provided that it meets certain conditions.    42 C.F.R. § 424.505; *see also* 42 U.S.C. § 1395l(e) (requirement to furnish information).

14.     There are several requirements before a supplier can be eligible for Medicare. Among those are that the supplier must submit a complete enrollment application and supporting documentation to CMS and provide complete, accurate, and truthful responses to all information requested, including information relating to its ownership and management.    *See* 42 C.F.R. § 424.510; Form CMS-855B, Section 5: Ownership Interest and/or Managing Control Information (Organizations), *available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/cms855b.pdf.    This information must be periodically updated, if it changes. *See* 42 C.F.R. § 424.516(e).

15.     Additionally, in order to enroll, Medicare requires that any supplier comply with any applicable state licensure, certification, and regulatory requirements.    *See* 42 C.F.R. § 424.516(a)(2).

16.     The Commonwealth of Pennsylvania Department of Health ("PADOH") has various rules that ambulance companies must follow to obtain and retain a license.    *See* 35 PA. CONS. STAT. § 8129; 28 PA. CODE. chapter 1027.    Among them, an ambulance company cannot transfer its license.    *See* 35 PA. CONS. STAT. § 8129(f).

17.     Upon approval of an enrollment application by CMS, the supplier enters into a contractual relationship with HHS and agrees to be bound by certain conditions.    The Medicare

2

statute only authorizes payment for services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A).   Any payments later determined to be for medically unnecessary services constitute overpayments to the supplier that CMS has a right to recover. The supplier agrees to repay any such overpayments with interest by, among other things, CMS's recoupment of such debts through the withholding of future payments.   *See* 42 U.S.C. § 1395ddd(f); 42 C.F.R. § 405.371(a)(3); Form CMS-855B, Section 15: Certification Statement.   CMS will refrain from recoupment of all payments if a supplier enters into and abides by the conditions of a repayment plan, including making all required payments.   *See* 42 U.S.C. § 1395ddd(f)(1). However, "if . . . a supplier fails to make a payment in accordance with a repayment plan under this paragraph, the Secretary, may immediately seek to offset or otherwise recover the total balance outstanding (including applicable interest) under the repayment plan." 42 U.S.C. § 1395ddd(f)(1)(D).

## FACTUAL BACKGROUND - PA PARAMEDICS

18.    PA Paramedics began operation in 2006, providing Basic Life Support and Advanced Life Support ("ALS") ambulance services in Pennsylvania.

19.    From 2006 until the present, PA Paramedics operated legally as a licensed provider of ambulance services in Pennsylvania.   At times, it did business under the name EasternCare Medical Services.

20.    PA Paramedics has been a Medicare supplier since 2007.

21.    At all times relevant to this complaint, Damon Wade was the sole owner of PA Paramedics.

22.    At all times relevant to this complaint, Damon Wade served as the President of

PA Paramedics.

23.     Through contractors, CMS periodically audits its providers and suppliers.   In 2013, PA Paramedics was audited by CMS.    That audit revealed overbilling of $206,410.60.

24.     PA Paramedics did not appeal this overpayment determination.

25.     In response to this audit, PA Paramedics entered into an Extended Repayment Plan ("ERP") under which CMS did not immediately recoup all ongoing payments from the federal government in exchange for PA Paramedics agreement that it would gradually repay its debt to CMS.

26.     A second audit, in 2014, found additional overbilling in the amount of approximately $1.24 million, bringing the total amount PA Paramedics owed to CMS to approximately $1.5 million.

27.     PA Paramedics did not appeal this overpayment determination.

28.     In response to this audit, PA Paramedics modified its ERP to include the new amounts.   CMS did not immediately recoup all ongoing payments from the federal government in exchange for PA Paramedics agreement that it would gradually repay its debt to CMS.

29.     PA Paramedics currently owes CMS over $2.6 million from its outstanding overpayment debt (including interest accrued to date and subject to further interest accruals).

30.     In April 2016, CMS revoked the billing privileges of PA Paramedics.

31.     PA Paramedics did not contest that revocation.

## DAMON WADE FORGES DOCUMENTS
## AND IS SUSPENDED AS A PARAMEDIC

32.     In order to remain licensed in Pennsylvania, ambulance companies must submit various documents to the PADOH, including documents that identify their ALS Medical Directors.   *See* 28 PA. CODE §§ 1027.1(b)(5), 1027.3(a), 1027.3(e).

4

33.     In 2014, Damon Wade submitted a Medical Command Check List document for PA Paramedics to PADOH.   In that document, PA Paramedics represented that its ALS Service Director was Dr. Kenneth Lavelle, M.D.   The document contained a signature purporting to be that of Dr. Lavelle.

34.     Dr. Lavelle was not, in fact, the ALS Service Director of PA Paramedics.

35.     Dr. Lavelle did not, in fact, sign the document.

36.     Instead, as Damon Wade subsequently admitted to PADOH authorities, he forged the signature on the document.

37.     This forgery was detected, in part, because Damon Wade misspelled Dr. Lavelle's name.

38.     In October 2015, Damon Wade reached a settlement with the PADOH relating to this forgery.   In that settlement, Wade admitted to forging Dr. Lavelle's signature.   A copy of that settlement is attached hereto as Exhibit 1.

39.     As a result of the settlement, Damon Wade's license as a paramedic was suspended for a period of one year, from October 14, 2015 until October 14, 2016.   He was subsequently reinstated, although his emergency medical services provider license was placed on probation for a period of three years.

**FACTUAL BACKGROUND – UNICARE AMBULANCE**

40.     Unicare was founded in 2013 by Trung Doan, Huu Hua, and Andy Nguyen.   It was licensed in Pennsylvania effective October 22, 2013 and began operation immediately.

41.     On February 17, 2014, Unicare applied to become a Medicare supplier.   It ultimately was accepted by CMS and eventually billed Medicare for transport of a single patient, but was not reimbursed prior to its sale (as described below).

42.     In the summer of 2015, the original owners of Unicare decided to sell the company.   They placed advertisements on the internet for its purchase.

43.     In late summer 2015, Unicare co-owner and President Trung Doan was contacted by Damon Wade about the possibility of purchasing Unicare.

44.     No tangible assets were included in this transaction; Unicare's ambulances were sold separately.

45.     At the time of this contact, Unicare had no patients and no source of income.

46.     However, Unicare remained an approved supplier with CMS.

47.     During the conversation about whether PA Paramedics would purchase Unicare, Damon Wade inquired whether Unicare was a CMS supplier.

48.     On or about August 31, 2015, through Damon Wade, PA Paramedics agreed to purchase Unicare for $20,000, paid in installments.

49.     The transfer of ownership in Unicare was completed on or about September 3, 2015.

50.     A copy of the sale agreement by which PA Paramedics acquired Unicare is attached hereto as Exhibit 2.

51.     PA Paramedics last submitted any form of payment on its ERP on September 21, 2015.

52.     The $12,000 check PA Paramedics used to complete the payment on September 21, 2015, was returned for insufficient funds.

53.     Trung Doan continued to correspond with Damon Wade in the months following the purchase of Unicare.   Wade was late in paying the last installments under the purchase agreement, and Doan wished to confirm that he, Huu Hua, and Andy Nguyen had no further

obligations with respect to Unicare's administration.

54.    Damon Wade and Doan corresponded on several occasions in September and October 2015 as Doan urged Wade to complete the final payments on the contract, which Wade delayed making for various stated reasons.

55.    On or about October 23, 2015, Doan received the final payment from Damon Wade or his agents, completing the sale transaction.

56.    That same day, Doan asked Wade to update Unicare's records with the PADOH. Wade told Doan that he would make the corrections that day.

57.    On or about October 26, 2015, Doan corresponded with Damon Wade to confirm that responsibility for the Internal Revenue Service Employer Identification Number ("EIN") for Unicare had transferred to PA Paramedics.   Wade assured Doan that it was.

58.    On the same day, Doan asked Damon Wade to confirm that Doan's name and those of Hua and Nguyen had been removed from the company's EIN record.

59.    Damon Wade told Doan that the paperwork had been sent in to remove the original partners' names from the EIN two weeks earlier.

60.    On December 17, 2015, Doan again reached out to Damon Wade to confirm that the EIN was no longer in the name of Doan or his partners.   Wade confirmed that this was the case.

61.    Doan then inquired as to whether the paperwork had been updated with the PADOH.   Damon Wade assured him that it was not "completely" finished, because Unicare was waiting for "some documents" to "come back" before it was done.

62.    This was the last communication between Doan and/or the original partner-owners of Unicare and Damon Wade.

63.     In fact, no paperwork was to "come back" from PADOH.    Rather, as described in detail below, Damon Wade had continued for months to put Doan's name on documents submitted to state and federal authorities, representing that Doan remained a partial owner and identifying Doan as the President of Unicare.    Wade would continue to do so for many months thereafter.

## UNICARE'S ACTUAL OWNERSHIP AND MANAGEMENT AFTER SEPTEMBER 3, 2015

64.     At all times after the purchase of Unicare on or about September 3, 2015, PA Paramedics was the sole owner of Unicare.

65.     At all times after the purchase of Unicare on or about September 3, 2015, PA Paramedics' President, Damon Wade, was the principal manager of Unicare.

66.     At all times after the purchase of Unicare on or about September 3, 2015, Damon Wade made all significant managerial decisions for Unicare and prepared the paperwork submitted to federal and state authorities on Unicare's behalf.

67.     At all times after the purchase of Unicare on or about September 3, 2015, Amy Wade acted as the biller for Unicare.

68.     After the sale of Unicare on or about September 3, 2015, Trung Doan had no ownership interest in Unicare.

69.     After the sale of Unicare on or about September 3, 2015, Trung Doan was not an officer of Unicare at any time.

70.     After the sale of Unicare on or about September 3, 2015, Trung Doan had no role in the operation of Unicare at any time.

71.     After the sale of Unicare on or about September 3, 2015, Trung Doan never signed any document on behalf of Unicare at any time.

8

## UNICARE LOSES ITS LICENSE

72.     PADOH requires that any ambulance provider advise it of substantial changes in that provider's ownership or management at least 30 days in advance of any such change.   *See* 28 PA. CODE § 1027.3(f).

73.     Despite the requirements of 28 PA. CODE § 1027.3(f), Unicare did not immediately inform PADOH that its ownership had transferred.

74.     On April 1, 2016, PADOH was advised for the first time that Unicare had been purchased in an electronic mail conversation between George Aupperlee of PADOH and someone writing as and purporting to be "Amy Wade" from the email account easternamb@gmail.com.

75.     On April 1, 2016, Aupperlee immediately responded by inquiring as to when the purchase had occurred.

76.     Despite the fact that the sales agreement was signed September 3, 2015, that the agreement was effective August 31, 2015, and that payment was made in full by October 23, 2015, "Amy Wade" informed Aupperlee that the sale had occurred on December 7, 2015.

77.     Aupperlee immediately informed "Amy Wade" that the sale violated Pennsylvania law, specifically 35 PA. CONS. STAT. § 8129(f), and therefore that Unicare's license to provide ambulance services was suspended retroactive to the purported date of sale of December 7, 2015.   A copy of Aupperlee's email to Unicare is attached hereto as Exhibit 3.

78.     Upon information and belief, had "Amy Wade" told Aupperlee the truth, that Unicare had been sold on September 3, 2015, Unicare's license would have been suspended retroactive to that date.

79.     During the email conversation on April 1, 2016, "Amy Wade" confirmed receipt

9

of Aupperlee's message and inquired as to what the process would be for keeping the existing

name (Unicare) and "obtaining the License the correct way."

80.    Unicare was informed it would need to apply for a new license.

81.    Unicare applied for a new license approximately two and a half months later, on

or about June 14, 2016.

82.    Unicare was granted a new license effective August 9, 2016.

83.    From December 7, 2015 until August 9, 2016, Unicare did not have a license to

provide ambulance services in the Commonwealth of Pennsylvania.

84.    From December 7, 2015 until August 9, 2016, Unicare performed ambulance

services in the Commonwealth of Pennsylvania, even though it had been advised of the

suspension of its license not later than April 1, 2016.

## UNICARE MISREPRESENTS ITS OWNERSHIP AND MANAGEMENT TO FEDERAL AUTHORITIES

85.    CMS requires that any Medicare supplier advise it of changes of ownership or

management within 30 days of such a change.    See 42 C.F.R. § 424.516(e)(1).

86.    Despite the foregoing, Unicare repeatedly submitted documents to CMS or its

contractors making misrepresentations about its ownership and management.    These documents

were principally submissions of Forms CMS-588 and CMS-858B to CMS or its Medicare

administrative contractor, Novitas Solutions, Inc. ("Novitas").

87.    Form CMS-588B contains express warnings that falsifying information on the

enrollment form is forbidden and that any deliberate omission, misrepresentation, or falsification

of any information contained in the application or accompanying communications could lead to

criminal, civil, and administrative penalties, including the denial or revocation of Medicare

billing privileges, which are further explained in a specific section entitled "Penalties for

10

Falsifying Information."

88.     Also, because of the importance of maintaining complete and accurate information, Form CMS-855B has suppliers certify that they agree to notify the Medicare contractor of any future changes to the information contained in the application in accordance with the timeframes established in 42 C.F.R. § 424.516.

The September 21, 2015 Submission

89.     Unicare submitted a Form CMS-588 to Novitas, on or about September 21, 2015.

90.     In that form, Unicare represented that Trung Doan was its President and Damon Wade was a "consultant."

91.     The CMS-588 submitted on or about September 21, 2015, was purportedly signed by Trung Doan.

92.     Doan never signed that form.

93.     Instead, upon information and belief, Damon Wade forged Doan's signature.

The November 1, 2015 Submission

94.     On or about November 1, 2015, Unicare submitted a form CMS-855B to CMS, changing certain information in its registration.

95.     This submission represented that Unicare's President was Amy Wade.

96.     This submission represented that Amy Wade had acquired ownership or management control on November 1, 2015.

97.     This submission included Damon Wade as a contact person for Unicare.

The January 4, 2016 Submission

98.     On or about January 4, 2016, Unicare submitted another CMS-588 to Novitas.

99.     The January 4 CMS-588 listed Trung Doan as Unicare's President and Amy

11

Wade as its Vice President.

100.    The CMS-588 submitted on or about January 4, 2016 was purportedly signed by

Trung Doan.

101.    Doan never signed that form.

102.    Instead, upon information and belief, Damon Wade forged Doan's signature.

### The January 15, 2016 Submission

103.    On or about January 15, 2016, Unicare submitted another CMS-588 to Novitas.

104.    The January 15 CMS-588 listed Amy Wade as Unicare's Vice President.

105.    The CMS-588 submitted on or about January 15, 2016, was purportedly signed by

Trung Doan as an authorized/delegated official of Unicare.

106.    Doan never signed that form.

107.    Instead, upon information and belief, Damon Wade forged Doan's signature.

### The January 19, 2016 Submission

108.    On or about January 19, 2016, Unicare submitted another, more complete version

of its January 15, 2016 submission to Novitas by way of a CMS-855B form.

109.    The January 19 submission again listed Trung Doan as Unicare's President.

110.    The January 19 submission again purported to contain Trung Doan's signature as

President.

111.    This time, however, the submission also requested that Damon Wade be listed as

a "Designated Official," which would allow him to receive correspondence and make Medicare

decisions for Unicare.    The individual purportedly authorizing this delegation was Trung Doan,

again in his listed capacity as Unicare's President.

112.   Doan never signed the January 19, 2016 CMS-855B in either location.

113.   Instead, upon information and belief, Damon Wade forged Doan's signature.

114.   Despite the fact that Doan was allegedly still Unicare's President, the January 19, 2016 CMS-855B lists the contact email for Unicare as "damon@easterncare.org."

115.   "damon@easterncare.org" was the email address for Damon Wade.

<u>The February 18, 2016 and February 19, 2016 Submissions</u>

116.   On January 28, 2016, Novitas rejected the Form CMS-855B for several technical reasons.

117.   In response, on or about February 18, 2016, Unicare submitted revisions to the CMS-588B to address Novitas's concerns.

118.   In an attempt to satisfy Novitas, the February 18, 2016 submission represents that Damon Wade is a Vice President of Unicare.   Again, on the February 18, 2016 submission, Trung Doan is listed as Unicare's President, and again his purported signature appears.

119.   Doan never signed the February 18, 2016 CMS-855B in either location his purported signature appears.

120.   Instead, upon information and belief, Damon Wade forged Doan's signature.

121.   Novitas responded a day later to this revised submission, noting several additional corrections that Unicare needed to make.

122.   Among the issues Novitas identified is that a Delegated Official – such as Damon Wade sought to become – had to be a W-2 employee or director.

123.   Within hours, Unicare responded with a further revision of the CMS-855B form, this time checking the box listing Damon Wade as an officer of Unicare.

124.   As a part of this revision, Unicare was required to certify that no one with an

13

ownership interest or exercising managing control – such as a Delegated Official or officer – had

been subject to a "final adverse legal action," defined on the form to include "a suspension of a

license to provide healthcare by any State licensing authority."

125.    In its revised submission, Unicare so certified.

126.    In fact, as described in paragraphs 30-37 above, Damon Wade – purportedly the

Vice President and seeking to become a Delegated Official – not only had suffered a final

adverse legal action but was actively experiencing it; at the time this form was submitted, Damon

Wade's PADOH license as a paramedic was suspended for forging PA Paramedics' medical

command authorization.

127.    In the February 19, 2016 resubmission, Unicare was also required to state whether

Damon Wade was a W-2 employee of Unicare.    Unicare checked the box representing that

Wade was a W-2 employee.

128.    Damon Wade was never an officer of Unicare.

129.    Damon Wade was never a W-2 employee of Unicare.

130.    Rather, upon information and belief, each of these misrepresentations was a naked

attempt to satisfy Novitas's concerns so that Damon Wade could be listed in CMS's records as

the primary contact person for Unicare.

131.    The February 19, 2016 CMS-855B resubmission is purportedly signed by Trung

Doan.

132.    Doan never signed the February 19, 2016 CMS-855B in either location his

purported signature appears.

133.    Instead, upon information and belief, Damon Wade forged Doan's signature.

134.    Had Novitas known that Damon Wade had been subject to a final adverse legal

14

action, CMS may not have approved his application to become part of management at Unicare.

135.    Indeed, pursuant to a notice issued on January 24, 2018, and effective February 23, 2018, CMS revoked Unicare's billing privileges, for, among other things, false or misleading information under 42 C.F.R. § 424.535(a)(4), for Unicare's failure to disclose Damon Wade's final adverse legal action arising from his PADOH paramedic license suspension.

136.    Unicare did not contest that revocation.

137.    Additionally, had Novitas known that Damon Wade was not, in fact, either an officer or W-2 employee of Unicare, he would not have been eligible to be a Delegated Official.

138.    Had CMS known that PA Paramedics owned Unicare, it would have taken steps to recover PA Paramedics' outstanding overpayments from Unicare.

139.    Instead, because CMS was unaware that PA Paramedics owned Unicare, its reimbursement to Unicare continued unabated, and none of these reimbursements was recovered to pay PA Paramedics' multi-million dollar debt to CMS.

## UNICARE REPEATEDLY MISREPRESENTS ITS OWNERSHIP AND MANAGEMENT TO STATE AUTHORITIES

140.    Throughout the process of its purchase and licensing, Unicare and its representatives misrepresented facts to both state authorities repeatedly.    The following are non-exclusive examples of these misrepresentations.

141.    As described above, during its correspondence with PADOH on April 1, 2016, Unicare represented its end of the conversation as being authored by Amy Wade.

142.    However, Amy Wade did not use the "easternamb@gmail.com" email account.

143.    Amy Wade did not even know the password to the "easternamb@gmail.com" email account.

144.    The individual who actually typed the "Amy Wade" emails to Aupperlee was

15